Nott, J.,
delivered the opinion of the court:
In 1861 the Government rented from the claimant a tract of land on Johnsons Island, near the city of Sandusky, for the purposes of a camp for Confederate prisoners of war. Soon after the occupancy under this lease, the officers in charge entered upon an adjoining tract of land without an express agreement with the claimant and with no express authority of law. The purpose of this entry was the burial of the Confederate dead. The number increased during the four years ensuing until about an acre of land was thus appropriated and occupied.
In 1878, Congress appropriated $1,500 "for care and protection of the Confederate cemetery on Johnsons Island,” with a proviso “ That before any expenditure is made the title to the land upon which the cemetery is located shall be transferred to the United States.” (Act 20th June, 1878, 20 Stat. L., pp. 206, 220.) The claimant apparently refused to convey the property, and nothing was done under the appropriation.
*270 In 1887, Congress appropriated $2,000 “for the erection of suitable fences amend the cemeteries in which Confederate dead are buried near Columbus and on Johnsons Island, Ohio, and for putting the ground in good condition.” Under this statute a permanent iron fence was, in 1887, erected around tbe cemetery.
These three facts aré all there are relating to the contractual relations of the parties to this suit: The unauthorized entry of the defendants’ officers in 1861: the recognition of the title to the property being elsewhere than in the Government in 1878, and the statute looking to.the permanent occupancy and control of the property by the Government in 1887. During the long interval between 1867 and 1887 no care, or custody, or possession, or control ajjpears on the part of the defendants. The unfortunate prisoners of war who slept in the little “God’s acre” represented the occupancy of the United States.
On these facts the claimant contends that the title still remains vested in himself, and the defendants contend that it has passed to the Government. The claimant seeks to recover what may be termed rent; and the defendants assert that the title passed to themselves in 1887, when Congress signified an intention to permanently occupy the property, and that a suit for the purchase money is now barred by the statute of limitations.
The cases which at this time present the condition of the law relating to the constitutional question of compensation for land taken for public use, where the Government in effect acquires a title in fee, are Langford v. United States (101 U. S. R., 341); United States v. Lee (106 id., 196); United States v. Great Falls Co. (112 id., 645); Hill v. United States (149 id., 593); Sweet v. Rechel (159 id., 380). These cases lead to the following legal results as at present declared by the Supreme Court:
1. An action will not lie against the United States for compensation where their officers entered upon’the property under a claim of legal right. 2. But an action in ejectment will lie against the officer in possession, and judgment may be recovered against him, though it will not bind the Government nor fix the compensation to be paid for the property if it be still held for public use. 3. Under the Constitution of the United States and of State constitutions having like provisions, the title does not pass until payment or tender of payment; but *271 “a statute which, authorizes the taking of the property for public use and directs the ascertainment of the damages without improper delay and in a legal mode, and which gives the owner a right to judgment therefor to be enforced by judicial process,” is equivalent to tender of the compensation and sufficient to transfer the title.
In this case the property was taken, and the act of 1887 must be regarded as an authority for or ratification of the. taking and of the intent to hold and occupy it permanently. The resulting question is whether the statute — the 'Tucker Act — authorizing actions against the Government, which are "founded upon the Constitution of the United States,” affords “a legal mode” for the ascertainment of the just compensation, and one11 which gives the oioner a right to judgment therefor” within the intent of the decision in Sweet v. Rechel, and thereby operates to transfer to the United States the title to the land.
But the facts established by the evidence are not such as will warrant the court in now passing upon that important question. In actions ex contractu, the measure of damages is the value of the property; in actions ex delicto, the injury which the defendant has directly caused to the plaintiff. In this case, the claimant has alleged the one, but has proved the other. He has correctly analyzed and set forth the legal conditions of his case in his own testimony, where he says u My present claim is made for the use and occupation of a tract of land on Johnsons Island by the United States Government as a burial place for prisoners of war who died while confined on the island during the time a portion of said island was under lease to the Government, and which is still so occupied, as it has been during all the period intervening since the close of the war, and which has been a serious detriment .to all the remaining property on the island.” The court is without jurisdiction to give effect to his proof byresolving his injuries into a judgment for damages for this serious detriment to his adjacent property.
The counsel for the claimant has urged that the responsibility should not be cast upon the citizen of evicting the officers of the United States, or of resisting a statute of Congress which, without providing a remedy for his constitutional compensation, authorizes an intrusion upon his property. It is greatly to the credit of the claimant that when the island *272 reverted to bis possession, in 1867 be did not exercise bis legal rights by invading tbe graves of tbe dead and removing their-bodies to some other resting place; and that be respected tbe act of Congress by allowing a permanent enclosure to be erected around tbe cemetery; but this action on bis part, commendable though it be, does not change tbe legal nature of tbe case, nor enlarge tbe jurisdiction of tbe court so that it can award him damages for tbe injuries which be has sustained.
Tbe judgment of tbe court is that tbe petition be dismissed..